## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CPS SOLUTIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: _____ |
| | ) | |
| BENJAMIN SARLE and JEFFREY | ) | |
| NEWTON, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT (INJUNCTIVE RELIEF REQUESTED) AND DEMAND FOR JURY TRIAL

Plaintiff CPS Solutions, LLC ("CPS" or "Plaintiff") alleges against Defendants Benjamin Sarle ("Sarle") and Jeffrey Newton ("Newton") (collectively, "Defendants") as follows:

### PRELIMINARY STATEMENT

1.      CPS is comprised of pharmacy industry experts and has partnered with hospitals and healthcare facilities nationwide to optimize pharmacy operations. CPS creates customized solutions for each of its clients. Since at least 2017, CPS was Central Maine Healthcare Corporation's ("CMH") exclusive pharmacy services provider. CPS provided pharmacy management services at three different pharmacy locations for CMH.

2.      The engagement included approximately 80 employees of CPS who worked on-site in CMH's in-patient, out-patient, and retail pharmacies. The employees included pharmacy managers, pharmacists, pharmacy technicians, and various other personnel. CPS made significant investments in its employees to ensure they were highly trained and proficient in

1

CPS's proprietary systems and processes, as well as applicable regulatory requirements, to maximize pharmacy results for CMH.

3.      Beginning in 2021, CPS engaged in many months of negotiations with a new leadership team at CMH regarding continuing the services arrangement between CMH and CPS. CPS made significant cost concessions to CMH in these negotiations. Despite the concessions and repeated assurances from CMH that the relationship would continue, in early 2023, CMH informed CPS that it would be terminating the relationship, effective May 1, 2023. CMH also informed CPS that Cardinal Health Inc. ("Cardinal") would become CMH's pharmacy services provider on that same date.

4.      CPS was surprised by the news given that Cardinal has not historically provided some of the type of services that CPS was providing to CMH. Cardinal's primary business has been the distribution of pharmaceutical products, not providing the employees and services needed to run pharmacies. Cardinal has historically acted as only a pharmaceutical product distributor to CMH. Indeed, during the years that CPS ran CMH's pharmacies, CPS often dealt with Cardinal and other distributors to ensure that the proper pharmaceutical products were supplied. Apparently, Cardinal is now responsible for both operating the pharmacies and supplying pharmaceutical products to CMH.

5.      CPS is informed and believes that Cardinal lacked both the necessary infrastructure and personnel to perform all of the same pharmacy services that CPS provided to CMH. To properly run and manage CMH's pharmacies requires a significant upfront investment in systems, hiring, and training of qualified staff. Presumably, Cardinal would have to figure out a way to recoup that significant upfront investment to enable it to provide the necessary services.

6.      As CPS has historically and continually made start-up and ongoing investments in the training of its people and in its intellectual property, CPS enters into contracts with its employees to protect its intellectual property.

7.      Defendants each signed an Employee Agreement, which imposed limitations on their use and disclosure of CPS's "Confidential Information," and contained reasonable non-solicitation and non-competition provisions designed to protect CPS's information and business.

8.      The non-competition provisions in the Employment Agreements (as defined below) preclude Defendants from participating (directly or indirectly) in any competing business following the termination of their employment with CPS for 18 months. Defendants also agreed not to accept employment to perform similar services for or with any hospital or affiliates in which they worked on-site.

9.      Defendants in this case breached their Employment Agreements by resigning from CPS and immediately accepting a position to work for Cardinal (a competing business) in the same CMH facility in which they worked for CPS.

10.     CPS's informal efforts to resolve these disputes and protect its interests have been unsuccessful. Therefore, CPS is forced to seek assistance from the Court to protect its business interests, contractual rights, and valuable business information and knowhow.

## PARTIES

11.     Plaintiff CPS Solutions, LLC is one of the nation's leading providers of pharmacy services, with its principal place of business located at 655 Metro Pl. S., Ste. 450, Dublin, OH 43017-3388.

12.     Defendant Benjamin Sarle was employed as a Pharmacy Manager by CPS and worked at a CMH facility in Maine from 2019 until his resignation on or about April 14, 2023.

He was in a management and supervisory position.  On information and belief, Defendant Sarle resides in the County of Oxford, State of Maine.

13.     Defendant Jeffrey Newton was employed as a Pharmacy Manager by CPS and worked at a CMH facility in Maine from 2009 until his resignation on or about April 14, 2023. He was in a management and supervisory position.  On information and belief, Defendant Newton resides in the County of Androscoggin, State of Maine.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 over this action because (a) neither defendant is a citizen of the same state as the plaintiff; and (b) the amount in controversy is over $75,000.00.

15.     This Court can exercise personal jurisdiction over both Defendants because they each consented to jurisdiction of the state and federal courts of Maine under their Employment Agreements.

16.     Venue is proper in the District of Maine under 28 U.S.C. § 1391 because (a) a substantial part of the events giving rise to the claim occurred in the County of Androscoggin, State of Maine; and (b) Defendant Newton resides in the County of Androscoggin, State of Maine, and Defendant Sarle resides in the County of Oxford, State of Maine.

## FACTUAL BACKGROUND

### CPS's Relationship with CMH

17.     CMH engaged CPS to provide administrative and management related pharmacy services in connection with operations at CMH's three hospital facilities in Maine.

18.     To perform services for each of its clients, CPS draws on its extensive experience and expertise in the pharmacy services and management space to create solutions for its clients

and the individualized needs of their pharmacy locations. CPS has historically invested in and continues to invest heavily in developing various proprietary systems and processes, intellectual property, and in training its employees.

19.     The engagement with CMH was no different. At great expense to CPS, it implemented numerous management systems and recruited, hired, and trained approximately 80 on-site personnel on those systems and how to operate CMH's multiple pharmacies. As managers and supervisors, Defendants Sarle and Newton were provided with access to and used CPS's confidential information and intellectual property for purposes of running CMH's multiple pharmacies. On information and belief, they are engaged in the same roles with Cardinal and in a position to apply the same confidential information and intellectual property for the benefit of their new employer.

**CPS's Intellectual Property and Personnel**

20.     Given the extensive investment, CPS takes numerous steps to protect the value of its confidential information, intellectual property, management systems, processes, and know-how. One of the most important ways that CPS accomplishes these goals is through contracts with its employees.

21.     CPS employees, including those working on-site at CMH's facilities like Defendants, are contractually bound by non-disclosure agreements ("NDAs") and reasonable restrictive covenants ("RCAs," and collectively with the NDAs, the "Employee Agreements").

22.     Defendant Sarle signed an Employee Agreement on or about May 20, 2022. A redacted copy of the Employee Agreement signed by Defendant Sarle is attached as **Exhibit 1**. CPS originally had hired Defendant Sarle on September 10, 2019, and when Defendant Sarle

executed the Employment Agreement, he was earning wages above 400% of the federal poverty level.

23.     Defendant Newton signed an Employee Agreement on or about April 22, 2022. A redacted copy of the Employee Agreement signed by Defendant Newton is attached as **Exhibit 2**.  CPS originally had hired Defendant Newton on May 11, 2009, and when Defendant Newton executed the Employment Agreement, he was earning wages above 400% of the federal poverty level.

24.     Under the terms of the Employment Agreements, the Defendants, like the rest of CPS employees, acknowledged that all information concerning CPS's "business, technology, business relationships or financial affairs" that has not been released to the general public belongs to CPS, must be kept confidential and can only be used by CPS employees in connection with their CPS employment. Examples of "Confidential Information" listed in the Employment Agreements include the following:

(a) *corporate information*, including plans, strategies, methods, policies, resolutions, negotiations or litigation; (b) *marketing information*, including strategies, methods, customer identities or other information about customers, prospect identities or other information about prospects, or market analyses or projections; (c) *financial information*, including cost and performance data, debt arrangements, equity structure, investors and holdings, purchasing and sales data and price lists; and (d) *operational and technological information*, including plans, specifications, manuals, forms, templates, software, designs, methods, procedures, formulas, discoveries, inventions, improvements, concepts and ideas; and (e) *personnel information*, including personnel lists, reporting or organizational structure, resumes, personnel data, compensation structure, performance evaluations and termination arrangements or documents.

25.     In addition to the limitations on use and disclosure of CPS's "Confidential Information," the Employment Agreements contain reasonable non-solicitation and non-competition provisions designed to protect CPS's information and business.

26.     Defendants are not permitted to "solicit, entice, attempt to persuade any other employee or consultant of the Company to leave the employ or service of the Company for any reason or otherwise participate in or facilitate the hire, directly or through another entity, of any employee or consultant of the Company."

27.     The non-competition provisions in the Employment Agreements preclude employees from participating (directly or indirectly) in any competing business following the termination of their employment with CPS for 18 months. Defendants have also agreed not to accept employment to perform similar services for or with any hospital or affiliates in which they worked on-site.

28.     The non-compete and non-solicitation covenants are designed to protect CPS's "Confidential Information" and business goodwill. These agreements are intended to prevent the very type of misconduct that occurred here, including using CPS's employees to access and use CPS's confidential information and intellectual property for a competitor's operations.

29.     A subset of the Employment Agreements requires disputes to be resolved in another designated forum and CPS is pursuing its claims against those employees in the appropriate forum.

## Employment Agreement Breaches

30.     On or about January 27, 2023, CMH informed CPS that it would be terminating their relationship, effective May 1, 2023, and that Cardinal would become CMH's pharmacy services provider on that same date.

31.     Consistent with Cardinal's core business, Cardinal was CMH's pharmacy distributor. Cardinal's experience running specialty and retail pharmacies was at best extremely limited. As a result, Cardinal lacked the personnel and the tools to perform the same services that CPS was performing.

32.     Almost immediately after receiving notice that Cardinal would be taking over, CPS began receiving reports that CMH and Cardinal had initiated discussions with CPS employees about them migrating over to Cardinal.

33.     In response to these reports, CPS sent communications to its potentially impacted employees to remind them of their contractual obligations, including the confidentiality, non-competition, and non-solicitation terms in their Employee Agreements.

34.     Thereafter, Cardinal and CMH representatives began interviewing CPS's employees, making job offers and seeking disclosure of CPS's confidential information necessary to run the pharmacies.

35.     Despite their contractual obligations, Defendants Sarle and Newton accepted jobs with Cardinal to provide the same services, at the same location, and using the same information and knowhow gained from their training and experience at CPS.

36.     CMH advanced the termination of its relationship with CPS from May 1, 2023, to April 15, 2023.

37.     Defendants' employment with Cardinal started thereafter.

### FIRST CLAIM FOR RELIEF

**Breach of Contract**
**(CPS against Defendants Sarle and Newton)**

38.     CPS repeats and realleges paragraphs 1 through 37 of the Complaint as if fully set forth herein.

39.     The Employment Agreements between CPS and Defendants Sarle and Newton, including the non-disclosure and non-competition agreements contained within those agreements, constituted binding and enforceable agreements.

40.     Under the terms of the non-competition agreements, Defendants Sarle and Newton agreed not to participate (directly or indirectly) in any competing business within a certain geographical area for 18 months. Defendants Sarle and Newton also agreed not to accept employment to perform similar services for or with any hospital or affiliates that were under contract with CPS during the previous 12 months. Defendants Sarle and Newton also agreed not to accept employment to perform similar services for or with any hospital or affiliates in which the employee worked during the previous 18 months.

41.     Under the terms of the non-disclosure agreements, Defendants Sarle and Newton agreed not to disclose any of CPS's confidential information (as defined by those agreements) to anyone (including a direct competitor such as Cardinal) at any time during or following their employment with CPS.

42.     Defendants Sarle and Newton breached the non-competition agreements by resigning from CPS and accepting positions to immediately work for Cardinal (a competing business) at the same CMH facility at which they were employed by CPS.

43.     Defendants Sarle and Newton breached the confidentiality provisions in the non-disclosure agreements by providing strictly confidential information to Cardinal and CMH.

44.     As a direct and proximate result of Defendants Sarle and Newton's conduct, CPS has sustained actual losses, including but not limited to loss of profits, goodwill, competitive advantage, and business opportunities.

45.     CPS has suffered irreparable harm as a result of the conduct by Defendants Sarle and Newton, and will continue to suffer irreparable harm unless Defendants Sarle and Newton are enjoined from engaging in any such further conduct.

46.     CPS is entitled to recover its reasonable attorney's fees and costs under the terms of the Employment Agreements.

## **PRAYER**

CPS prays for relief as follows:

1.     Judgment against Defendants Sarle and Newton;

2.     Preliminary and permanent injunctive relief as follows:

    a.     Enjoining Defendants Sarle and Newton from using or disclosing CPS's confidential information;

    b.     Requiring Defendants Sarle and Newton to turn over any and all copies of CPS's confidential information to CPS;

    c.     Enjoining Defendants Sarle and Newton from working for Cardinal, CMH, or another competitor in violation of the Employee Agreements;

3.     Compensatory damages according to proof;

4.     Disgorgement of profits;

5.     Attorney's fees and costs;

6.     Maintain jurisdiction over this matter for the purpose of enforcing and overseeing compliance with any injunctive relief issued; and

7.     Any such other relief the Court deems just and appropriate.


By its attorney,

CPS SOLUTIONS, LLC


Dated:  July 11, 2023                    /s/ Seth W. Brewster
                                         Seth W. Brewster, Bar No. 3741
                                         Attorney for Plaintiff CPS Solutions, LLC

EATON PEABODY
100 Middle Street
PO Box 15235
Portland, ME 04112-5235
(207) 274-5266
sbrewster@eatonpeabody.com

Charles E. Weir (*Pro Hac Vice App Forthcoming*)
Benjamin E. Strauss (*Pro Hac Vice App Forthcoming*)
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
(310) 312-400 (Telephone)
(310) 312-4224 (Facsimile)
CWeir@manatt.com
BStrauss@manatt.com