UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CPS SOLUTIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:23-cv-00269-NT |
| | ) |
| BENJAMIN SARLE and JEFFREY NEWTON, | ) |
| | ) |
| Defendants. | ) |

### ORDER ON MOTION TO DISMISS

Before me is a motion to dismiss brought by Defendants Benjamin Sarle and Jeffrey Newton (ECF No. 15). For the reasons stated below, the motion is **DENIED**.

### FACTUAL BACKGROUND[1]

Plaintiff CPS Solutions, LLC ("**CPS**") is a nationwide pharmacy services provider. Compl. ¶¶ 1, 11 (ECF No. 1). Its employees include pharmacy industry experts who partner with hospitals and other healthcare facilities "to optimize pharmacy operations." Compl. ¶ 1. CPS invests heavily in a variety of proprietary systems and processes, as well as intellectual property, which it uses to operate its

---

[1] The following facts are drawn from the record material properly before me—the Complaint and redacted versions of Benjamin Sarle and Jeffrey Newton's (together, the "**Defendants**") employment agreements. *See Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (explaining that documents attached to a complaint may be considered on a motion to dismiss). The Defendants ask me to consider factual material outside of this record, namely, affidavits from each Defendant and unsupported assertions made in their brief. *See* Mot. to Dismiss of Defs. Sarle & Newton ("**MTD**") 3–7, Exs. A & B (ECF Nos. 15, 15-1 & 15-2). But these items do not fall within any of the categories of material I may properly consider on a motion to dismiss, *see Schatz*, 669 F.3d at 55–56, so I do not consider them. Because I am excluding this improperly-submitted material, I continue to treat this as a motion to dismiss under Rule 12(b)(6), and not as a motion for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

clients' pharmacies. Compl. ¶¶ 6, 18, 20. This work is specific and customized. With each client it serves, CPS tailors its approach to the individualized needs of the facility. Compl. ¶¶ 1, 18. At each pharmacy it operates, CPS devises and implements management systems, recruits and hires employees, and trains them on CPS's proprietary systems. Compl. ¶¶ 2, 18–19.

Since at least 2017, CPS was the exclusive pharmacy services provider for Central Maine Healthcare Corporation ("**CMH**"). Compl. ¶ 1. CPS provided pharmacy management services at three different CMH facilities. Compl. ¶ 1. About 80 CPS employees worked on-site at CMH pharmacies. Compl. ¶ 2. CPS recruited, hired, and trained these employees, including on CPS's proprietary systems and how to operate CMH's multiple pharmacies, which included in-patient, out-patient, and retail locations. Compl. ¶¶ 2, 19. This work required "significant upfront investment" by CPS. Compl. ¶ 5.

Benjamin Sarle and Jeffrey Newton (together, the "**Defendants**") worked as pharmacy managers for CPS at CMH facilities. Compl. ¶¶ 12–13. In their management and supervisory roles, Sarle and Newton "were provided with access to and used CPS's confidential information and intellectual property for purposes of running CMH's multiple pharmacies." Compl. ¶ 19. In the spring of 2022, Newton and Sarle each signed an Employee Restrictive Covenant Agreement with CPS (the "**Employment Agreements**"). Compl. ¶¶ 21–23; Employment Agreements (ECF Nos. 1-1 & 1-2). These Employment Agreements barred them from disclosing certain

2

confidential CPS information.[2] Compl ¶ 24; Employment Agreements ¶ 1. They also barred them from working for a competing business anywhere in the United States for 18 months following their separations from CPS (the "**Noncompete Clauses**"). Compl. ¶¶ 25, 27; Employment Agreements § 8.

In 2021, CPS began negotiating with a new leadership team at CMH about continuing their service arrangement. Compl. ¶ 3. CPS made significant cost concessions in these negotiations, and received repeated assurances from CMH that their relationship would continue. Compl. ¶ 3. However, in early 2023, CMH informed CPS that it had decided to terminate their relationship, effective May 1, 2023. Compl. ¶ 3. Cardinal Health Inc. ("**Cardinal**") would replace CPS as CMH's pharmacy services provider. Compl. ¶ 3.

CPS was surprised by this news because Cardinal had not historically provided pharmaceutical operation services. Compl. ¶¶ 4, 31. Cardinal's primary business was pharmaceutical product distribution. Compl. ¶¶ 4, 31. In fact, during the years that CPS ran CMH's pharmacies, CPS dealt with Cardinal as a distributor to make sure CMH's pharmacies were properly stocked. Compl. ¶ 4. But now, Cardinal would apparently supply *and* operate CMH's pharmacies. Compl. ¶ 4.

CPS doubted that Cardinal had the infrastructure or personnel necessary to deliver pharmacy operation services to CMH. Compl. ¶¶ 5, 31. Just after learning

---

[2] "Confidential Information" under the Employment Agreements includes "corporate information" like plans and strategies; "marketing information" like customer identities; "financial information" like performance data and price lists; "operational and technological information" like manuals, templates, and formulas; and "personnel information" like resumes and performance evaluations. Employee Restrictive Covenant Agreements ("**Employment Agreements**") § 1 (ECF Nos. 1-1 & 1-2).

3

that Cardinal was replacing it, CPS began receiving reports that CMH and Cardinal were recruiting its employees to come work for Cardinal. Compl. ¶ 32. Cardinal and CMH began interviewing CPS employees, making job offers, and seeking disclosure of confidential CPS information necessary to run CMH's pharmacies. Compl. ¶ 34. CPS reminded employees of their contractual requirements, including their nondisclosure of confidential information and noncompete obligations. Compl. ¶ 33.

Despite these reminders and their contractual duties, Sarle and Newton accepted jobs with Cardinal providing the same services, at the same CMH pharmacy locations, as they had for CPS. Compl. ¶ 35. In these new roles, Sarle and Newton provided confidential CPS information to Cardinal and CMH. Compl. ¶ 43. Cardinal was therefore able to shortcut the type of significant upfront investment CPS had to make to provide pharmacy operation services to CMH, and instead just extract confidential CPS information from its former employees. Compl. ¶¶ 18–19, 34–35, 43. In the midst of these hires, CMH terminated its relationship with CPS on April 15, 2023, two weeks ahead of schedule. Compl. ¶ 36. As a result of Sarle and Newton's breaches of their Employment Agreements, CPS sustained a series of losses, including loss of profits, goodwill, competitive advantage, and business opportunities. Compl. ¶ 44.

On July 11, 2023, CPS filed this lawsuit against Sarle and Newton for breach of contract. Within a single breach of contract claim, CPS alleges that the Defendants violated their nondisclosure of confidential information and noncompete obligations. Compl. ¶¶ 39–43. In its Complaint, CPS seeks a judgment against Sarle and Newton;

4

injunctive relief barring them from using confidential CPS information or working for Cardinal, CMH, or another competitor; and a variety of monetary damages and relief. Compl. at 10. Sarle and Newton have moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), 'a complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, with enough factual detail to make the asserted claim plausible on its face.'" *Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 36 F.4th 29, 33 (1st Cir. 2022) (quoting *Cardigan Mtn. Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 85 (1st Cir. 2015)). A complaint's well-pleaded facts are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Lawrence Gen. Hosp. v. Cont'l Cas. Co.*, 90 F.4th 593, 598 (1st Cir. 2024). In this process, courts set aside and "do not credit . . . legal labels or conclusions, or statements that merely rehash elements of the cause of action." *Halsey v. Fedcap Rehab. Servs., Inc.*, --- F.4th ---, 2024 WL 911754, at *5 (1st Cir. 2024) (quoting *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 23 (1st Cir. 2018)). Instead, they focus on whether "the complaint's non-conclusory, non-speculative factual allegations . . . plausibly narrate a claim for relief." *Pitta v. Medeiros*, 90 F.4th 11, 17 (1st Cir. 2024) (quoting *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022)).

## DISCUSSION

### I. Breach of Contract: Disclosure of Confidential Information

CPS alleges that Newton and Sarle shared confidential CPS information with Cardinal and CMH, in violation of their Employment Agreements. Compl. ¶ 43. Newton and Sarle maintain that CPS has failed to state a claim with respect to disclosure of confidential information. The Defendants' main argument is that the allegations in the Complaint are too conclusory to support the claim. Mot. to Dismiss of Defs. Sarle & Newton ("**MTD**") 4 (ECF No. 15). They also fault CPS for not seeking relief sooner and, in reply, contend that CPS failed to allege that it took affirmative steps to protect the information in question. MTD 4; Defs.' Reply in Supp. of Their Mot. to Dismiss ("**Reply**") 3 (ECF No. 21).[3]

With respect to their main argument, the Defendants maintain that CPS "paints with the broadest brush" when it comes to allegations that Newton and Sarle breached their obligations not to disclose confidential CPS information. MTD 4. On a motion to dismiss, it is true that I must set aside mere labels and conclusions. *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020). But the Complaint here contains more than that. CPS alleges that it invested heavily in developing proprietary systems and processes, intellectual property, and employee training tailored to CMH's needs. Compl. ¶¶ 18–19. And despite its specialty in providing pharmacy management services, it lost the CMH contract to Compass, a company that specializes in distributing pharmaceutical

---

[3]   As mentioned above, Newton and Sarle also attached affidavits to their motion to dismiss in an attempt to counter CPS's factual allegations about their use of confidential information. MTD 4–5, Exs. A & B. These affidavits are not properly before me on a motion to dismiss, so I have not considered them.

products, not running actual pharmacies. Compl. ¶¶ 1–4, 31. CPS further alleges that Cardinal made up for its lack of know-how by hiring CPS employees like Newton and Sarle, getting them to divulge confidential CPS information, and making use of that information to run CMH's pharmacies. Compl. ¶¶ 5, 30–35, 37, 43. That, CPS's theory goes, is how Cardinal was able to provide tailored pharmacy management services to CMH, when Cardinal's track record did not otherwise suggest it was qualified to do so. Whether this theory bears out remains to be seen, but at the pleading stage, CPS has plausibly alleged that Newton and Sarle breached their agreements not to disclose confidential information.[4]

Next, Newton and Sarle maintain that CPS's delay in seeking to enforce the nondisclosure of confidential information terms in the Employment Agreements undercuts the claim. MTD 4. Specifically, they assert that CPS's decision to wait three months after the end of its engagement with CMH (and six months after it learned CMH had decided to terminate the contract) to file suit "disproves any claim that it truly perceives that it has confidential information at risk." Reply 3; *see* MTD 1, 4. Relatedly, they criticize CPS's decision not to file a motion for a preliminary injunction, which they contend CPS would have done if its claim had merit. Reply 3. Newton and Sarle do not support these contentions with any relevant legal citations. In any event, a party may have any number of legitimate reasons not to file a motion

---

[4] The Defendants' citation to *Sodexo Operations, LLC v. Abbe*, 382 F. Supp. 3d 162 (D. Mass. 2019) does not call for a different result. MTD 4. There, the court found that the plaintiff failed to carry its burden on the likelihood-of-success preliminary injunction factor because it did not offer adequate proof on what information it deemed confidential or why it was entitled to protected status. *Sodexo*, 382 F. Supp. at 165–66. But here, at the motion to dismiss stage, plausible allegations are sufficient. CPS does not yet have to offer proof.

for a preliminary injunction, which is a form of "extraordinary relief." *Cushing v. Packard*, 30 F. 4th 27, 35 (1st Cir. 2022). Nor do I find anything unusual about the months-long delay here in filing suit, particularly where CPS alleges that it tried unsuccessfully to resolve this matter informally before bringing it to court. Compl. ¶ 10.

The Defendants also assert that CPS failed to allege that it took affirmative steps to protect the information it now claims is confidential. Reply 3. This argument is a non-starter. CPS alleges that it "takes numerous steps to protect the value of its confidential information," and that "[o]ne of the most important" steps it takes is requiring that "CPS employees, including those working on-site at CMH's facilities" sign nondisclosure agreements. Compl. ¶¶ 20–21. These allegations are sufficient at the motion to dismiss stage.

## II. Breach of Contract: Violation of Noncompete Clauses

CPS alleges that Newton and Sarle breached the Noncompete Clauses in their Employment Agreements by accepting positions with Cardinal to perform the same functions, at the same location, where they previously worked for CPS. Compl. ¶ 35. Newton and Sarle argue that this claim should be dismissed because the Noncompete Clauses are unenforceable. Their central contention is that the Noncompete Clauses do not protect any legitimate business interest of CPS. MTD 2–6.

In 2019, the Maine Legislature enacted "An Act to Promote Keeping Workers in Maine," codified at 26 M.R.S. §§ 599-A, 599-B. L.D. 733 (129th Legis. 2019). Under this law, "[n]oncompete agreements are contrary to public policy." 26 M.R.S. § 599-

A(2).[5] They are enforceable only if "they are reasonable and are no broader than necessary to protect one or more . . . legitimate business interests of the employer." *Id.* The law lists three legitimate business interests: the employer's trade secrets, confidential information, and goodwill. *Id.* For the no-broader-than-necessary requirement, the law provides that "[a] noncompete agreement may be presumed necessary if the legitimate business interest cannot be adequately protected through an alternative restrictive covenant, including but not limited to a nonsolicitation agreement or a nondisclosure or confidentiality agreement." *Id.*[6]

Here, CPS alleges that the Noncompete Clauses were necessary to protect its confidential information and goodwill, which are both "legitimate business interests" under § 599-A(2). Newton and Sarle counter that because CPS lost the contract with CMH, it no longer has any business interests to protect. MTD 4. Relatedly, they argue that CPS cannot use noncompete provisions to protect itself from "future speculative competition." MTD 2. The problem for Newton and Sarle is that their argument relies on facts not properly before me. Their brief inserts a series of unsupported factual assertions about CPS's business, including where it operates and who it can employ, rather than sticking, as they must, to the factual assertions in the Complaint. MTD 5–7. For its part, CPS maintains that the new facts in the Defendants' brief "are

---

[5] The law defines "noncompete agreement" as "a contract or contract provision that prohibits an employee or prospective employee from working in the same or a similar profession or in a specified geographic area for a certain period of time following termination of employment." 26 M.R.S. § 599-A(1)(B).

[6] Though not applicable here, Maine's law also prohibits noncompete agreements altogether for employees earning wages at or below 400% of the federal poverty level and licensed veterinarians who do not have ownership interests in their facilities. 26 M.R.S. § 599-A(3).

9

simply wrong, or at the very least heavily disputed." Pl.'s Opp'n to Mot. to Dismiss ("**Opp'n**") 2 (ECF No. 20); *see also* Opp'n 1–2, 7–11.

Based only on the factual assertions properly before me, CPS has plausibly alleged that the Noncompete Clauses are necessary to protect its confidential information and goodwill. CPS contends that in order to serve clients like CMH, it invests heavily in designing a variety of proprietary systems and processes and intellectual property. Compl. ¶¶ 18–19. And, it alleges that Newton and Sarle, as pharmacy managers, had access to, and were trained on, this proprietary information for the purpose of running CMH's pharmacies. Compl. ¶ 19. CPS further alleges that in working for a competitor, Newton and Sarle funneled this confidential information to a company with limited-to-no experience running pharmacies, and as a result, CPS lost a contract to the otherwise-unqualified competitor. Compl. ¶¶ 2–5, 19, 34–35, 42–43. At this stage, CPS has plausibly alleged that the Noncompete Clauses are necessary to protect legitimate businesses interests recognized under Maine's law.[7]

However, as this case proceeds, CPS will have the burden to prove that Newton and Sarle's Noncompete Clauses were "no broader than necessary" to protect CPS's confidential information and goodwill. *See* 26 M.R.S. § 599-A(2). Indeed, the Noncompete Clauses are not enforceable if there was a less drastic way for CPS to

---

[7] The Defendants accurately point out that CPS cannot use noncompete provisions to prevent them from using their general pharmacy management knowledge and skill with a different employer. Defs.' Reply in Supp. of Their Mot. to Dismiss ("**Reply**") 1–2 (ECF No. 21) (citing *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶¶ 17–18, 770 A.2d 97). The line between the use of general professional know-how and specific CPS confidential information can be explored further in discovery. For purposes of this motion, CPS has plausibly alleged that the Noncompete Clauses were necessary to prevent the Defendants from using confidential information specific to CPS.

10

protect its legitimate business interests. In discovery, Newton and Sarle will have the opportunity to explore, for example, whether the nondisclosure of confidential information term in their Employment Agreements was itself adequate to protect these interests. *Id.*[8] But for now, CPS has plausibly stated a claim for breach of enforceable noncompete provisions.

## CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss (ECF No. 15) is **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of March, 2024.

---

[8]  The Defendants make passing references to the broad scope of the Noncompete Clauses—18-month, nationwide restrictions on working for any competitor—and generally assert that noncompete agreements are unfair if they restrict employees' ability to support themselves in their chosen professions. MTD 3, 7; Reply 4. They contend that I should declare the Noncompete Clauses unenforceable based only on the facts pled in the Complaint. MTD 3. Their legal support for this contention does state that the reasonableness of a noncompete provision is a question of law for the court, but then goes on that "[t]he reasonableness of a specific covenant must be determined by the facts developed in the case as to its duration, geographic area, and the interests sought to be protected." *OfficeMax Inc. v. Cnty. Qwick Print, Inc.*, 709 F. Supp. 2d 100, 107–08 (D. Me. 2010)); *see* MTD 3. The Defendants rely on cases where the parties have engaged in at least some discovery, often in the context of a motion for a preliminary injunction. They have not provided any examples of courts dismissing breach of noncompete claims at the pleading stage. The scope of the Noncompete Clauses here do seem quite broad, and it will be CPS's burden to prove that they are "reasonable" under 26 M.R.S. § 599-A(2). This may be an uphill battle for CPS, but on the Complaint and briefing before me, I am not prepared to say they fail as a matter of law. Moreover, I question whether case law predating Maine's 2019 noncompete law, which by statute declares that noncompete agreements are "are contrary to public policy," 26 M.R.S. § 599-A(2), are still good authority. But this question will wait for another day.

11